IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIMINAL NO. JKB-12-0138 |
| GREGORY STEVEN HORN, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion for Compassionate Release (ECF No. 169). The Motion will be denied.

### I. RELEVANT BACKGROUND

On March 22, 2011, Defendant was released from federal prison after being convicted of armed bank robbery in the Middle District of Tennessee. (ECF No. 97 at 3.) Less than nine months later, Defendant committed the bank robbery offenses charged in this case. (*Id.*) Defendant pled guilty to armed bank robbery and conspiracy to commit armed bank robbery on January 7, 2013. (*See* ECF No. 40.) This Court imposed an above-Guidelines sentence of 216 months' imprisonment on November 20, 2013. (ECF No. 98.) On August 13, 2024, the Court reduced Defendant's sentence to 180 months pursuant to 18 U.S.C. § 3582(c)(2) based on the retroactive application of Amendment 821 to the U.S. Sentencing Guidelines. (ECF Nos. 151, 153.)

According to Defendant, on April 28, 2025, the Bureau of Prisons ("BOP") placed Defendant in a halfway house in Baltimore. (ECF No. 169 at 1.) On August 12, 2025, Defendant sent the Court a letter asking to be transferred to a different facility due to rampant drug use at the halfway house. (ECF No. 164 at 1.) The Court denied the request because it has no authority to

displace a Bureau of Prisons directive on the place of custody. (ECF No. 165.) On August 18, 2025, Defendant sent the Court another letter stating that he had begun using drugs at the halfway house, so the BOP had transferred him to the Rappahannock Regional Jail. (ECF No. 166.) In this letter, Defendant—without citing any legal authority—asked the Court to reduce his sentence and allow him to begin supervised release. (*Id.* at 1.) The Court declined to do so. (ECF No. 167.) Defendant has now filed a formal Motion for Compassionate Release seeking relief under the "other reasons provision." (ECF No. 169.) The Court construes this as a reference to § 1B1.13(b)(5) of the United States Sentencing Guidelines, which provides guidance for when a district court may grant a sentence reduction for "extraordinary and compelling reasons" pursuant to 18 U.S.C. § 3582(c)(1)(A).

## II.  DISCUSSION

Under 18 U.S.C. § 3582(c)(1)(A), a district court may modify a convicted defendant's sentence when "extraordinary and compelling reasons warrant such a reduction" and such relief is permitted by "the factors set forth in section 3553(a) to the extent that they are applicable." Prior to filing a motion for compassionate release, a movant is required to exhaust his administrative remedies. *See United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020). As the moving party, "the defendant bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582." *United States v. Hudson*, No. ELH-19-173, 2023 WL 3340066, at *7 (D. Md. May 10, 2023).

### A. Administrative Exhaustion

A defendant may only move for a sentence reduction under § 3582(c)(1)(A) after he or she "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [after] the lapse of 30 days from the receipt of such a request

2

by the warden of the defendant's facility, whichever is earlier." Here, Defendant admits that he has not first requested compassionate release from the warden of his facility. (ECF No. 169 at 5.) However, Defendant is apparently not housed at a BOP facility. Rather, at least when his Motion was filed, he was housed at Rappahannock Regional Jail, a Virginia state jail. (ECF No. 169-1.) "Since he is not incarcerated at a Bureau of Prisons facility, there is no Bureau of Prisons warden to whom he can submit a request for a reduction in sentence." *United States v. Barringer*, No. PJM 13-0129, 2020 WL 2557035, at *3 (D. Md. May 19, 2020). Thus, "the exhaustion of the administrative process . . . is complete because [Defendant] has done all he can to exhaust his administrative remedies." *Id.*; *see also United States v. Norris*, 458 F. Supp. 3d 383, 386 (E.D. Va. 2020) (explaining that a defendant need not first petition the BOP for compassionate release where, as here, he is incarcerated at a state jail, rather than a BOP facility).

### B. Extraordinary and Compelling Reasons

Because the Court finds that Defendant exhausted his administrative remedies, it now must determine if a sentence reduction is justified. This analysis proceeds in two steps. *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022). First, the Court must find that Defendant has presented "extraordinary and compelling reasons" supporting relief. 18 U.S.C. § 3582(c)(1)(A)(i); *Bethea*, 54 F.4th at 831. If the Court makes this finding, then it must still determine "that release is appropriate under the 18 U.S.C. § 3553(a) sentencing factors." *Bethea*, 54 F.4th at 831.

Defendant fails at the first step. § 1B1.13(b) of the Sentencing Guidelines lists the specific circumstances which are sufficient to justify release. *See generally* § 1B1.13(b)(1)–(4). Defendant concedes, however, that none of these circumstances apply to him. Rather, he references the catch-all "other reasons" provision. (ECF No. 169 at 1.) This provision allows the Court to grant a sentence reduction if "[t]he defendant presents any other circumstance or combination of

3

circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4). § 1B1.13(b)(5). However, Defendant does not point to any reasons which "are similar in gravity" to the specific circumstances laid out in § 1B1.13(b)(1)–(4).

Rather, Defendant first asserts that he has been rehabilitated and is "ready to live life again." (ECF No. 169 at 3.) But Defendant provides no evidence of his rehabilitation, which could include records of achievements in prison, letters of support, or certifications obtained. Furthermore, "rehabilitation alone cannot constitute an extraordinary and compelling reason for release." *United States v. Davis*, No. 21-6960, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022).

Defendant also explains that the BOP recently sent him to a halfway house where he quickly relapsed on drugs. (ECF No. 169 at 1–2.) Defendant asks the Court to reduce the remainder of his sentence and place him in a drug treatment program. (*Id.* at 3.) While the Court is sympathetic to Defendant's request for drug treatment, a drug relapse and desire for treatment is not a basis for a sentence reduction. *See, e.g.*, *Hudson*, 2023 WL 3340066, at *8. Rather, the Court encourages Defendant to seek drug treatment in prison.

Finally, Defendant notes that his 74-year-old mother has health issues and lives in a senior center. (ECF No. 169 at 4.) However, he does not claim that she is incapacitated as required by § 1B1.13(b)(3). Furthermore, she lives in a senior center where she presumably has sufficient care. (ECF No. 169 at 4.) As a result, Defendant has failed to meet his burden of showing that there are "extraordinary and compelling reasons" justifying his release.

### C. § 3553(a) Sentencing Factors

Even had the Court found that extraordinary and compelling reasons exist to support release, the Court still would have denied a sentence reduction because the § 3553(a) factors do

4

not warrant release. § 3553(a) provides that a court shall consider various factors in imposing a sentence, including: (1) the nature and circumstances of the offenses; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (4) the need for deterrence; (5) the need to protect the public; (6) the kinds of sentence and the sentencing range; and (7) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Based upon these factors, the Court initially imposed a 216-month sentence, which was well above the Guidelines range. (ECF No. 101 at 1–2.) The Court's primary rationales for this upward variance were to protect public safety, incapacitate Defendant, and promote specific deterrence. (*Id.* at 2.) The Court noted that Defendant had recently completed a prison sentence for armed bank robbery when he committed the armed robberies at issue in this case. (*Id.*) The Court made clear that its sentence was meant "to deliver a sufficient deterrent message to [Defendant]" and to incapacitate him "into his mid to late 50s, an age at which he may finally lose the inclination to commit violent offenses." (*Id.* at 3.)

The Court adopts this analysis of the § 3553(a) factors and finds it equally applicable today. The Court pauses to highlight three factors: the history and characteristics of the defendant, the need to protect the public, and the need for deterrence. Here, Defendant has a significant prior criminal history and "has been in and out of the criminal justice system for almost his entire life." (*Id.* at 1.) While the Court is encouraged by Defendant's statement that he does not intend to commit the crimes of his past, this does not persuade the Court to change its assessment of the § 3553(a) factors. Just months after being sent to a halfway house, Defendant relapsed on drugs. (ECF No. 169 at 1–2.) As noted above, Defendant also committed the bank robberies at issue in

this case shortly after being released from prison for similar offenses. (ECF No. 101 at 2.) While Defendant is now in his low 50s, the Court is not convinced that he will cease violent crime if he leaves prison sooner than his current sentence permits. In short, the Court finds that Defendant has not carried his burden of demonstrating that he has been specifically deterred from committing more crimes or that he is no longer a danger to the public.

### III.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion for Compassionate Release (ECF No. 169) is DENIED.

DATED this 20 day of October, 2025.

BY THE COURT:

James K. Bredar
United States District Judge